**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Kristen E. Boysen (KB 0208)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiff and the putative*
*FLSA Collective*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SCOTT HIMROD, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | **COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| **CYGNUS MEDICAL, LLC, MADISON POLYMERIC ENGINEERING, INC., SHAUN SWEENEY and WALTER L. MAGUIRE, JR., Jointly and Severally,** | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiff Scott Himrod (the "Plaintiff"), individually and on behalf of all others similarly situated, as collective representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff is a former surgical instrument specialist at Defendants' medical products manufacturing and repair company headquartered in Branford, Connecticut. Despite the fact that Plaintiff was required to work well in excess of forty (40) hours per week, he was paid either a flat

salary that did not vary with the number of hours that he worked, or a uniform hourly rate for all hours for which he received compensation, such that he did not receive overtime premiums for hours worked in excess of forty (40) in a week.

2. Plaintiff brings this action to recover unpaid overtime premium pay owed to him and all similarly situated employees of Defendants pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also brings claims for unreimbursed business expenses and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3. Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and any individual who elects to opt in to this action ("Opt-in Plaintiffs").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff**:

7. Plaintiff Scott Himrod ("Himrod") was, at all relevant times, an adult individual

residing in Hudson County, New Jersey and Essex County, New Jersey.

8.   Throughout the relevant time period, Plaintiff performed work for Defendants in metal repair shops in the basements of Mount Sinai Beth Israel – Petrie Division (hereinafter "Beth Israel Petrie"), located at 281 1st Avenue, New York, NY 10003, and Mount Sinai Hospital, located at 1468 Madison Avenue, New York, New York 10029 (hereinafter "Mount Sinai Uptown"). At various times throughout his employment, Plaintiff Himrod serviced four (4) hospitals in Manhattan, New York:  Beth Israel Petrie; Mount Sinai Beth Israel Phillips Ambulatory Care Center (hereinafter "Beth Israel PACC"), located at 10 Union Square East, New York, New York 10003; New York Eye & Ear Infirmary of Mount Sinai (hereinafter "NY Eye & Ear" and, collectively with Beth Israel Petrie and Beth Israel PACC, the "Downtown Hospitals"), located at 310 East 14th Street, New York, New York 10003; and Mount Sinai Uptown. Throughout his employment , Plaintiff Himrod additionally performed substantial work at the Cygnus Medical repair shop, located at 7 Kulick Road, Fairfield, New Jersey 07004.

9.   Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**<u>Defendants</u>:**

10.   Upon information and belief, Cygnus Medical, LLC ("Cygnus") is an active Connecticut State Limited Liability Company with headquarters located at 965 West Main Street, Branford, Connecticut 06405.

11.   Upon information and belief, Madison Polymeric Engineering Inc. ("Madison Polymeric" and, together with Cygnus, the "Corporate Defendants") is an active Connecticut State Corporation with headquarters located at 965 West Main Street, Branford, Connecticut 06405.

12.   Upon information and belief, Defendants Shaun Sweeney ("Sweeney") and Walter

L. Maguire, Jr. ("Maguire" and, together with Sweeney, the "Individual Defendants") are owners and operators of the Corporate Defendants who set the companies' payroll policies, including the unlawful practices complained of herein.

13.    Upon information and belief, Madison Polymeric is a parent corporation of Cygnus that holds a controlling interest in the company.

14.    The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiff and the Corporate Defendants' other similarly situated employees and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

15.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

16.    At all relevant times, Plaintiff and the Opt-in Plaintiffs were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

17.    Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

18.    At all relevant times, the Corporate Defendants have used goods and materials produced in interstate commerce, and have employed two (2) or more individuals who handled these goods and materials.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since April 17, 2016 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management technicians (the "Collective Action Members").

20.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiff and the Collective Action Members did not receive overtime premium payments for all hours worked in excess of forty (40) hours per week.

21.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## STATEMENT OF FACTS

### Defendants' Companies

22.     At all relevant times, Defendants have been in the medical products manufacturing and repair business. Upon information and belief, Defendants own, operate and manage their companies from corporate offices located at 965 West Main Street, Branford, CT 06405, as well as a repair shop at 7 Kulick Road, Fairfield, NJ 07004.

23.     According to Cygnus Medical's website, "Cygnus Medical Instrument Repair Service is a comprehensive preventative maintenance program. … With Facility Based Labs, Mobile Fleet Labs and a centrally located Primary Repair Facility based in Fairfield NJ, Cygnus Medical is able to provide a full range of services for the surgical suite." (http://www.cygnusmedical.com/products_new/cygnus-medical-surgical-instrument-

repair.html). Cygnus also manufactures a variety of medical products, including "endoscope transport & protection products, endoscopic bedside pre-cleaning kits, manual cleaning kits, enzymatic detergents, cleaning pads and endoscopic channel brushes, [and] wrap protection, instrument protection and patient positioning products." (http://www.cygnusmedical.com).

24.     Defendant Madison Polymeric is a protective packaging design and manufacturing company with headquarters located at 965 West Main Street, Branford, CT 06405. According to Madison Polymeric's website, "Madison Polymeric Engineering (MPE) was founded by Walter L. Maguire, Jr. in a garage in Madison, CT. …Our story began in Walter's garage with one little clicker press and a band saw… today our facility is 150,000 square feet, located in Branford, CT, and is full of automated presses, CNC controlled hot wire cutting, die cutting, lathe cutting and water jet cutting machines." (http//madpoly.com). In the medical context, Madison Polymeric "design[s] medical positioners, wound dressing products, endoscopy kit material handling products, molded pulp plastic replacement parts, and SPD foam pouches." *Id*.

25.     Upon information and belief, Defendants' employee, Brian Katz, is a manager at Cygnus. Upon information and belief, Defendants Sweeney and Maguire are in constant contact with Katz and other managers to ensure that Defendants' companies are operating in accordance with their standards and procedures.

26.     Upon information and belief, Defendants' employee, Katherine Belmont, handles payroll for both Cygnus and Madison Polymeric in Defendants' Branford, Connecticut offices. Plaintiff Himrod is in possession of certain June 2017 e-mails with Belmont in which he asked for interpretation of one of his checks and stated that he was concerned that he was being paid for eighty (80) hours in a two (2)-week pay period, despite working well over one hundred (100) hours. During this exchange, Belmont confirmed that Himrod was paid a salary of eighty thousand

dollars ($80,000.00) per year and that his hourly rate would not change with the number of hours that he worked. Himrod is also in possession of a December 26, 2018 e-mail from Belmont in which she informs Himrod that he will receive his final paycheck on December 28, 2018 and that he will be paid for a total of forty (40) hours for his last week. Belmont's e-mail signature block indicates that she is the Controller for both Cygnus Medical, LLC and Madison Polymeric Engineering, Inc.

**Plaintiff's Work for Defendants**

27.     Plaintiff Himrod was employed by Defendants as a surgical instrument specialist for approximately one (1) year from 2014 to 2015 and again from approximately September 1, 2016 through late December 2018 (collectively, the "Himrod Employment Period"). Himrod was initially hired by Defendant Sweeney and Himrod's manager, Brian Katz, who gave him his initial schedule and told him the manner in which he was going to be paid. Defendant Sweeney ultimately informed him that he was going to be laid off at the end of 2018 after Cygnus stopped servicing certain accounts on which Himrod had performed work.

28.     Throughout the Himrod Employment Period, Plaintiff Himrod performed a variety of tasks related to handheld surgical instrument repair, such as sharpening scissors and aligning instruments, in metal repair shops in the basements of Beth Israel Petrie and Mount Sinai Uptown. At various times throughout the Himrod Employment Period, Plaintiff Himrod serviced four (4) hospitals in Manhattan, New York:  Beth Israel Petrie; Beth Israel PACC; NY Eye & Ear; and Mount Sinai Uptown.

29.     During Plaintiff Himrod's first period of employment, from 2014 through 2015, he was required to drive from his home in Jersey City, New Jersey, to the Cygnus repair shop, located at 7 Kulick Road, Fairfield, New Jersey 07004, to clock in and pick up his repair truck. From there,

Plaintiff Himrod drove to Manhattan, where he picked up and repaired surgical instruments for the three (3) Downtown Hospitals in the back of his truck. Specifically, Himrod repaired instruments for Beth Israel Petrie two (2) days per week, for Beth Israel PACC two (2) days per week and for NY Eye & Ear one (1) day per week.

30.    During the first year of his employment, Plaintiff Himrod typically left the Fairfield office for Manhattan between 7:00 am and 7:30 am and worked at Beth Israel Petrie servicing the Downtown Hospitals until around approximately 4:00 pm, and sometimes later. Himrod was additionally required to return to the Fairfield shop at the end of the day to return his truck, clock out and turn in his time card. On average, Plaintiff Himrod returned to the Fairfield shop at around 6:00 pm or 7:00 pm, and sometimes later, such that he typically worked a total of ten to twelve (10-12) hours per day, Monday through Friday. Additionally, because NY Eye & Ear required that Plaintiff Himrod pick up surgical instruments for repair late in the afternoon on Fridays, he would frequently pack up his work and transport it to the Fairfield shop, where he would work an additional ten to twelve (10-12), and sometimes as many as sixteen (16), hours on a Saturday to complete his heavy workload. On average, Plaintiff Himrod worked approximately sixty to seventy (60-70) hours per week, and sometimes more, during his first year of employment.

31.    During Plaintiff Himrod's second period of employment, from approximately September 2016 through December 2018, Himrod was permitted to travel directly from his home in Newark, New Jersey to the Downtown Hospitals in Manhattan without first reporting to the Fairfield office, after Beth Israel Petrie opened up a repair shop in the basement of the hospital.

32.    From in or around September 2016 through approximately winter 2017, Plaintiff Himrod typically worked eight to twelve (8-12) hours per day on the three (3) Downtown Hospitals, Monday through Friday, plus an additional ten to twelve (10-12) hours per day on

Saturdays in the Fairfield shop on NY Eye & Ear work, for a total of approximately sixty to seventy (60-70) hours per week.

33.     Approximately four to six (4-6) months after the start of his second period of employment, Plaintiff Himrod was required to work at Mount Sinai Uptown in addition to the work that he performed for the Downtown Hospitals. Thus, starting in or around January or February 2017, Plaintiff Himrod worked at Beth Israel Petrie servicing the three (3) Downtown Hospitals from approximately 10:00 am to 3:30 pm, before traveling to Mount Sinai Uptown, where he repaired surgical instruments from approximately 4:00 pm to 10:00 pm. Again, Himrod generally worked an additional ten to twelve (10-12) hours on Saturdays to complete his heavy workload for NY Eye & Ear. Thus, during this period, Plaintiff Himrod typically worked approximately seventy (70) hours per week, and sometimes more.

34.     For a period of approximately one and one-half to two (1.5-2) months in or around February and March 2017, Plaintiff Himrod's workload increased substantially after another technician abruptly quit after one (1) day of servicing the Downtown Hospitals. During this period, Plaintiff Himrod was typically required to work in excess of one hundred (100) hours to complete both his own workload and that of the former employee. Although Himrod's manager, Brian Katz, repeatedly assured him that he would receive overtime premiums for his work at some point in the future, Plaintiff Himrod continued to receive a flat biweekly salary.

35.     In or around March 2017, Plaintiff Himrod participated in a conference call with Defendants Sweeney and Maguire, during which Defendants specifically informed him that they could not afford to pay him at time and a half for all the hours that he worked in excess of forty (40) per week and that, in order to avoid paying him overtime premiums, Defendants would instead pay him as an "independent contractor," such that he would be required to bill the hours that he

worked at straight time. During the period that Plaintiff Himrod was classified as a contractor, he typically worked between four to eight (4-8) hours at the Downtown Hospitals and an additional six to eight (6-8) hours at Mount Sinai Uptown Monday through Friday, plus an additional ten to twelve (10-12) hours on Saturday, for a total of between approximately sixty (60) and eighty (80) hours per week.

36.     Throughout the Himrod Employment Period, Defendants maintained significant supervision, direction and control over Plaintiff Himrod during the period that he was classified as an independent contractor. As mentioned above, Defendants specifically informed Himrod that he would be classified as a contractor solely to avoid paying him overtime premiums. Thus, during the two to three (2-3) months that he worked as a "contractor," Himrod did not experience any appreciable changes in his job duties, and he continued to work a rotation and schedule that was initially set by Defendants. Plaintiff Himrod additionally continued to use the same Cygnus Medical I.D. badge that he had been issued at the start of his employment period, and Defendants provided all of the equipment and tools that he used within the Beth Israel Petrie repair shop. Defendants additionally set Himrod's billable hourly rate of approximately $33.65, which was based on his annual salary of $70,000.00 divided by 2,080 hours per year, and Himrod was in frequent contact with his manager, Brian Katz, during this period to discuss the work that he performed and issue complaints about his heavy workload and lack of help from coworkers. Throughout his employment period, Plaintiff Himrod, who typically worked between sixty (60) and seventy (70) hours per week, and sometimes significantly more, was not able to provide his services to any other entity and did not make his services available to the general public. Further, Plaintiff Himrod did not contract with Defendants to work for any predetermined period of time, thus indicating that Defendants and Himrod were free to terminate the relationship at will.

37.     After approximately two to three (2-3) months of being classified as a contractor, in or around May or June 2017, Plaintiff Himrod participated in another conference call with Sweeney and Maguire, during which they informed Himrod that the number of hours that he was billing was "getting out of hand." As a solution, Sweeney and Maguire then proposed that Defendants reclassify Himrod as an employee, take him off of the Beth Israel Petrie and Beth Israel PACC accounts and give him a ten thousand dollar ($10,000.00) raise. Thus, from in or around June 2017 through in or around mid-to-late fall 2017, Plaintiff Himrod began working approximately ten (10) hours per day at Mount Sinai Uptown, plus an additional ten to twelve (10-12) hours on Saturday on NY Eye & Ear work, for an average of approximately sixty (60) hours per week.

38.     In or around November or December 2017, Defendants assigned Plaintiff Himrod back to Beth Israel Petrie and Beth Israel PACC, in addition to Mount Sinai Uptown and NY Eye & Ear, to replace certain outgoing technicians. Because the technicians who had serviced Beth Israel PACC and Beth Israel Petrie in Himrod's absence were removed after approximately four to five (4-5) months due to the poor quality of their work, Plaintiff Himrod's workload increased substantially, such that he was working approximately six to nine (6-9) hours at the Downtown Hospitals, to make up for work that the previous technicians had neglected or done incorrectly, and approximately eight (8) hours at Mount Sinai Uptown, Monday through Friday, plus an additional ten to twelve (10-12) hours on Saturdays on work for NY Eye & Ear, for a total of approximately seventy to eighty (70-80) hours per week between approximately November or December 2017 and September 2018.

39.     During approximately the last three (3) months of the Himrod Employment Period, after Cygnus lost its account with NY Eye & Ear, Plaintiff Himrod typically worked six to twelve

(6-12) hours per day at the Downtown Hospitals four (4) days per week and approximately six (6) hours per day at Mount Sinai Uptown five (5) days per week, for a total of approximately fifty-four to sixty (54-60) hours per week.

40.     From the beginning of the Himrod Employment Period through in or around spring 2017, Plaintiff Himrod was paid a salary of seventy thousand dollars ($70,000.00) per year, which was designed to cover eighty (80) hours per two (2)-week pay period, or 2,080 hours per year.

41.     During the period that Defendants classified Himrod as an "independent contractor," he was paid at a rate of approximately thirty-three dollars and sixty-five cents ($33.65) per hour, at straight time, for all hours that he worked, for which he was instructed to invoice Cygnus Medical, LLC. Himrod's hourly rate was based on his former annual salary of seventy thousand dollars ($70,000), divided by 2,080 hours per year.

42.     After Plaintiff Himrod was reclassified as an employee, he was again paid an annual salary at an increased rate of eighty thousand dollars ($80,000.00), which was designed to cover eighty (80) hours per two (2)-week pay period, or 2,080 hours per year.

43.     Despite the fact that he generally worked between sixty (60) and seventy (70) hours per week, and sometimes significantly more, during the periods that he was paid a yearly salary, Plaintiff Himrod routinely received a biweekly paystub showing a maximum of eighty (80) hours per week, with no hourly or overtime rate specified, as required by New York Labor Law § 195.

44.     At no point during Plaintiff's employment period did he receive a wage notice showing, among other information, his hourly or overtime rates.

45.     As mentioned above, Plaintiff Himrod was frequently required to perform work at the Fairfield repair shop on weekends to service the NY Eye & Ear equipment, some of which required special equipment and machinery, such as a bead blasting cabinet, which was only

available at the Fairfield shop. Throughout the Himrod Employment Period, Katz informed Himrod that the work needed to get done and that he would reimburse Himrod for the twenty-dollar ($20.00) roundtrip bus ride from his home to the shop. Accordingly, on one occasion, Himrod provided Katz with pictures of approximately five hundred dollars ($500.00) in receipts. Although Katz informed Himrod repeatedly that he would "take care of" the reimbursements and that the receipts had been sent to Belmont, Himrod was ultimately never compensated for these trips.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

46.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

47.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

48.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

49.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Opt-in Plaintiffs)**

50.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

51.     Defendants willfully violated Plaintiff's and the Opt-in Plaintiffs' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

52.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Opt-in Plaintiffs to suffer loss of wages and interest thereon.  Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE**
**(Brought on Behalf of Plaintiff and the Opt-in Plaintiffs)**

53.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

54.     Defendants have willfully failed to supply Plaintiff and the Opt-in Plaintiffs notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Opt-in Plaintiffs as their primary language, containing Plaintiff's and Opt-in Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or

other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

55.     Due to Defendants' violations of the NYLL, Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiff and the Opt-in Plaintiffs)**

56.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

57.     Defendants have willfully failed to supply Plaintiff and the Opt-in Plaintiffs with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime

rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

58.     Due to Defendants' violations of the NYLL, Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNREIMBURSED BUSINESS EXPENSES
#### (Brought on Behalf of Plaintiff and the Opt-in Plaintiffs)

59.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

60.     Defendants required Plaintiff to incur transportation costs for travel to and from their repair shop on the weekend but did not reimburse Plaintiff for the cost of his bus tickets. Accordingly, Defendants are required to compensate Plaintiff for all business expenses that Defendants required Plaintiffs to incur without reimbursement.

61.     The Defendants' NYLL violations have caused Plaintiff and the Opt-in Plaintiffs irreparable harm for which there is no adequate remedy at law.

70.     Due to Defendants' NYLL violations, Plaintiff is entitled to recover damages from Defendants in the amount of Defendants' unreimbursed business expenses for which Plaintiff and the Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL § 663(1) *et seq.* and § 196-d.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Opt-in Plaintiffs, respectfully requests that this Court grant the following relief:

a.      Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.      An order tolling the statute of limitations;

c.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

d.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.      An award of compensatory damages as a result of Defendants' failure to pay and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

f.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.   Fifty dollars ($50.00) per Plaintiff and each of the Opt-in Plaintiffs for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Opt-in Plaintiffs as provided for by NYLL, Article 6 § 198(1)-b;

h.   Two hundred fifty dollars ($250.00) per Plaintiff and each of the Opt-in Plaintiffs for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Opt-in Plaintiffs as provided for by NYLL, Article 6 § 198(1)-d;

i.   An award of damages arising out of the failure of Defendants to reimburse Plaintiff for business expenses;

j.   An award of prejudgment and post-judgment interest;

k.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.   Such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       April 17, 2019

                                        Respectfully submitted,

                                        **PELTON GRAHAM LLC**

                                        By: _____
                                        Brent E. Pelton (BP 1055)

18

pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
Kristen E. Boysen (KB 0208)
boysen@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative
FLSA Collective*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Cygnus Medical and/or its owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

1/11/19
Date

Scott Himrod
Printed Name